IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00653-SOM-07 |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | MICHAEL NGYUEN'S MOTION TO |
| | ) | REDUCE SENTENCE |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL NGYUEN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT MICHAEL NGYUEN'S
MOTION TO REDUCE SENTENCE**

**I.        INTRODUCTION.**

In a 2013 Superseding Indictment, Defendant Michael
Ngyuen and eight co-Defendants were charged with various
methamphetamine crimes.  *See* ECF No. 88.  On August 14, 2014,
Ngyuen entered a plea of guilty to Count I of the Superseding
Indictment (conspiracy to possess with intent to distribute 50
grams or more of methamphetamine) pursuant to a plea agreement.
*See* ECF Nos. 215, 216.

The Government had filed a Special Information as to
Prior Drug Conviction, which had the effect under 21 U.S.C.
§§ 841(b)(1)(A) and 851 of enhancing the sentence Ngyuen faced
given a state-court drug offense.  That prior conviction was for
promoting a dangerous drug in the second degree in violation of
section 712-1242 of Hawaii Revised Statutes in Criminal No. 07-1-
1038.  Ngyuen was sentenced to five years of probation in that

state case.  *See* ECF No. 209.  Based on this, Ngyuen had a statutory mandatory minimum prison sentence of 240 months in the present case, although his advisory sentencing guideline range was 168 to 210 months.  *See* Presentence Investigation Report, ECF No. 325, PageID #s 1109, 1111, 1117-18 (placing Ngyuen at Total Offense Level 33 and in Criminal History Category III); Transcript of Proceeding (Sentencing) (Dec. 8, 2014), ECF No. 780, PageID #s 5955-56 (adopting Presentence Investigation Report).  Ngyuen was ineligible for the safety valve under the law in effect at the time, as he had more than one criminal history point.  *See* 18 U.S.C. § 3553(f)(1) (2014).

Before the sentencing hearing, the Government filed a Motion for Downward Departure on the basis of Ngyuen's "substantial cooperation and assistance to law enforcement authorities in the investigation and prosecution of another." *See* ECF No. 298, PageID # 1006.  The Government explained:

> Immediately after his arrest, Defendant waived his rights and agreed to give a comprehensive statement regarding his drug trafficking activity.  Defendant also agreed to assist the Government by agreeing to testify in the trial against his supplier co-defendant, John Penitani.  Defendant has always been forthright, completely truthful and cooperated to the fullest extent possible, never wavering from his commitment to assist the government.
>
> . . . .
>
> Defendant was regarded as the highest volume distributor for co-defendant John

2

> Penitani.  As a result, Defendant's
> cooperation and early plea contributed to the
> later change of plea and cooperation of co-
> defendant John Penetani.

*Id.*, PageID #s 1006-07.  The Government recommended a 60-month reduction from the 240-month mandatory minimum.  *Id.*, PageID # 1007.  At sentencing, the Government also recognized that Ngyuen feared retaliation from Penitani.  *See* ECF No. 780, PageID # 5969.  Given Ngyuen's substantial assistance and the risk to him, this court departed downward to 168 months of imprisonment.  *Id.*, PageID #s 5971, 5976.

Ngyuen has been in custody since June 25, 2013.  *See* ECF No. 325, PageID # 1091.  He is 42 years old and incarcerated at Sheridan FCI.  His projected release date, taking potential good time credit into account, is July 3, 2025.  *See* https://www.bop.gov/inmateloc/ (input BOP Register Number 00706-122) (last visited August 18, 2022).  Ngyuen has served about 110 months of his 168-month sentence.  According to the BOP website, Sheridan FCI currently has 5 inmates and 11 employees who have COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visted August 18, 2022).

Ngyuen seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that the enormous disparity between his 168-month sentence and the sentence he would receive if he were sentenced today amounts to an extraordinary and compelling reason warranting a sentence reduction to time served.  While Ngyuen

says his "motion is not based on the dangers of the COVID-19
pandemic," ECF No. 771, PageID # 5810, he nevertheless submitted
medical records showing he was at risk of a serious case of
COVID-19, as he has a BMI placing him in the overweight category
and just below the obese category.  *See* ECF No. 774, PageID
# 5844; ECF No. 325, PageID # 1114;

https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english
_bmi_calculator/bmi_calculator.html (last visited August 18,
2022) (adult BMI calculator);

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
people-with-medical-conditions.html (last visited August 18,
2022) (noting that people who are overweight are more likely to
get very sick from COVID-19).

This court grants Ngyuen's motion.

**II.      ANALYSIS.**

Ngyuen's compassionate release request is governed by
18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent

4

that they are applicable, if it finds that--

(i) extraordinary and compelling reasons
warrant such a reduction . . . .

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission.

In other words, for the court to exercise its authority under
§ 3582(c)(1)(A), it must initially determine that the defendant
exhausted his administrative remedies or that 30 days have passed
since he filed an administrative compassionate relief request.
If a defendant has satisfied the exhaustion requirement, then the
court may only exercise its discretion after examining three
considerations.  First, it must find that extraordinary and
compelling reasons warrant a sentence reduction.  Second, it must
find that such a reduction is consistent with the Sentencing
Commission's policy statements (assuming there are any policy
statements applicable to this motion).  Third, it must consider
and weigh the factors set forth in 18 U.S.C. § 3553(a) to
determine under the particular circumstances presented that the
requested reduction in sentence is warranted.  *See United States
v. Wright*, – F.4th –, 2022 WL 3009398, at *4 (9th Cir. July 29,
2022); *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw.
June 10, 2020).  "Although a district court must conclude that a
defendant satisfies all three predicates before granting a motion
for compassionate release, it may deny compassionate release if a
defendant fails to satisfy any of these grounds."  *Id.*

### A.   Nguyen Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

Defendants are authorized to petition courts for compassionate release after exhausting their administrative remedies with the Bureau of Prisons.  *See Wright*, 2022 WL 3009398, at *3.  Nguyen submitted an administrative compassionate release request to the warden of his prison, who denied that request on February 14, 2022.  *See* ECF Nos. 771-1 and -2, PageID #s 5813, 5815.  That compassionate release request was not based on the changes in the sentencing laws that he now focuses on. Some judges have opined that changing one's arguments can render a matter unexhausted.  *See United States v. Kanohokula*, 2021 WL 5411211, at *3 (D. Haw. Nov. 18, 2021) ("if the basis for compassionate release is not presented to the BOP, the BOP has no ability to address the request on its merits, meaning that the prisoner's claim cannot be exhausted").  To eliminate a failure to exhaust as an issue, Nguyen, on July 15, 2022, submitted to his warden another compassionate release request based on the issues raised in the present motion.  *See* ECF Nos. 784-1 and 800. The warden denied that second request, *see* ECF No. 800, and more than 30 days have now passed since Nguyen submitted that second

6

request.  At this point, Ngyuen satisfies the time-lapse
provision of the exhaustion requirement in 18 U.S.C.
§ 3582(c)(1)(A), as the Government conceded at the hearing on
this motion.

        **C.**    **Ngyuen Has Demonstrated That Extraordinary and
Compelling Circumstances Justify His Early Release
At This Time.**

                **1.**    **The Disparity Between Ngyuen's Actual
Sentence and the Sentence He Would Likely
Receive Today Amounts to an Extraordinary and
Compelling Circumstance Justifying a Sentence
Reduction.**

Ngyuen bears the burden of establishing an
extraordinary and compelling reason warranting compassionate
release.  *See Kanohokula*, 2021 WL 5411211, at *4 (D. Haw. Nov.
18, 2021).  Ngyuen argues that the sentencing disparity between
the 168-month sentence he received and what he would be sentenced
to today justifies compassionate release.  Ngyuen had a Total
Offense Level of 33 and was in Criminal History Category III,
which gave him a guideline range of 168 to 210 months.  However,
his prior state-court drug conviction subjected him to a
mandatory minimum sentence of 240 months.  21 U.S.C. § 841 ("If
any person commits such a violation after a prior conviction for
a felony drug offense has become final, such person shall be
sentenced to a term of imprisonment which may not be less than 20
years . . . .") (2014).  The Government moved for a downward

7

departure based on substantial assistance and Ngyuen was ultimately sentenced to 168 months of imprisonment.

Under the First Step Act of 2018, PL 115-391 (Dec. 21, 2018), the portion of § 841(b)(1) that raised Ngyuen's mandatory minimum sentence to 20 years was amended. The statute now provides: "If any person commits such a violation after a prior conviction for a serious drug felony or a serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years." Thus, to now be subjected to the mandatory minimum of 15 years (not 20 years), a defendant must have a prior conviction for a "serious drug felony," not just a "felony drug offense."

A "serious drug felony" is "an offense described in section 924(e)(2) of Title 18[1] for which-(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15

---

[1]To qualify as a "serious drug felony" under § 924(e)(2), the offense must be "(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A). Although Ngyuen's state-court conviction satisfies 18 U.S.C. § 924(e)(2)(A)(ii), it does not satisfy the one-year imprisonment requirement of 21 U.S.C. § 802 (second 57).

years of the commencement of the instant offense."  21 U.S.C.
§ 802 (second 57).  Ngyuen's state-court drug offense for
promoting a dangerous drug in the second degree in violation of
section 712-1242 of Hawaii Revised Statutes in Criminal No. 07-1-
1038 does not now qualify as a "serious drug felony" for purposes
of a § 851 enhancement, as it involved a Class B felony for which
Ngyuen received five years of probation, although that crime
carried a maximum term of imprisonment of 10 years.  *See* ECF No.
209, PageID # 593 (explaining that Ngyuen was sentenced to five
years of probation); Haw. Rev. Stat. § 706-660(1).  If sentenced
today, Ngyuen would not be subject to the 15-year mandatory
minimum.

         Ngyuen's conviction did involve more than 50 grams of
methamphetamine, its salts, isomers, and salts of its isomers,
requiring this court to examine whether Ngyuen would still be
subject to § 841's mandatory minimum sentence of 10 years in
custody.  As conceded by the Government at the hearing, under
today's version of 18 U.S.C. § 3553(f), Ngyuen would be eligible
for the safety valve.  That provision now provides:

> Notwithstanding any other provision of law,
> in the case of an offense under section 401,
> 404, or 406 of the Controlled Substances Act
> (21 U.S.C. 841, 844, 846), section 1010 or
> 1013 of the Controlled Substances Import and
> Export Act (21 U.S.C. 960, 963), or section
> 70503 or 70506 of title 46, the court shall
> impose a sentence pursuant to guidelines
> promulgated by the United States Sentencing
> Commission under section 994 of title 28

9

without regard to any statutory minimum
sentence, if the court finds at sentencing,
after the Government has been afforded the
opportunity to make a recommendation, that-

(1) the defendant does not have-

(A) more than 4 criminal history points,
excluding any criminal history points
resulting from a 1-point offense, as
determined under the sentencing guidelines;

(B) a prior 3-point offense, as
determined under the sentencing guidelines;
and

(C) a prior 2-point violent offense, as
determined under the sentencing guidelines;

(2) the defendant did not use violence or
credible threats of violence or possess a
firearm or other dangerous weapon (or induce
another participant to do so) in connection
with the offense;

(3) the offense did not result in death or
serious bodily injury to any person;

(4) the defendant was not an organizer,
leader, manager, or supervisor of others in
the offense, as determined under the
sentencing guidelines and was not engaged in
a continuing criminal enterprise, as defined
in section 408 of the Controlled Substances
Act; and

(5) not later than the time of the sentencing
hearing, the defendant has truthfully
provided to the Government all information
and evidence the defendant has concerning the
offense or offenses that were part of the
same course of conduct or of a common scheme
or plan, but the fact that the defendant has
no relevant or useful other information to
provide or that the Government is already
aware of the information shall not preclude a
determination by the court that the defendant
has complied with this requirement.

10

18 U.S.C. § 3553(f) (2022).

The safety valve's five conditions are also set forth in § 5C1.2 of the United States Sentencing Commission's Guidelines Manual (2021).  Under § 2D1.1 of those advisory guidelines, when a "defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 . . . ., decrease [the offense level] by **2** levels."  This means that, if sentenced today, Ngyuen would have a Total Offense Level of 31 and be in Criminal History Category III, giving him an advisory guideline range of 135 to 168 months of imprisonment.  With a motion for downward departure that seeks a one-level adjustment, which the Government says it would seek, *see* ECF No. 779, PageID #s 5943-44, Ngyuen would have a Total Offense Level of 30 and be in Criminal History Category III, resulting in an advisory guideline range of 121 to 151 months.  This court previously sentenced Ngyuen to the low end of his advisory guideline range and would likely do so again at this time.  Accordingly, the court would likely sentence Ngyuen to no more than 121 months if he were sentenced today, possibly less.

The disparity between Ngyuen's actual sentence of 168 months imprisonment and what would likely be his sentence today is an extraordinary and compelling reason to reduce his sentence to time served.  The court notes that, given good time credit, Nguyen, had he been sentenced to 121 months in custody, would

likely be eligible for release now, as he has served approximately 110 months of his sentence.

Recently, the Supreme Court decided *Concepcion v. United States*, holding "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." 142 S. Ct. 2389, 2404 (June 27, 2022). The only limits on this discretion are those set by Congress or by the Constitution. *Id.* at 2400. *Concepcion* also held that, when deciding a First Step Act motion, a court must explain its decision and demonstrate that it considered the parties' arguments. *Id.* at 2404.

In 2007, Concepcion had pled guilty to one count of distributing five or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 228 months of imprisonment. *Id.* at 2396. As a career offender, he had a guideline range of 262 to 327 months, rather than 57 to 71 months. *Id.*

Congress subsequently passed the Fair Sentencing Act of 2010 to address the harsh sentencing disparity between crack cocaine and powder cocaine crimes. However, Concepcion was not eligible for Fair Sentencing Act relief at that time given his career offender status. *Id.* at 2397.

12

After the First Step Act became law, Concepcion moved
to be resentenced.  His motion appears to have been brought under
section 404 of the First Step Act and under 18 U.S.C.
§ 3582(c)(2), which provides for a motion to reduce a sentence
when a sentencing range has been lowered by the Sentencing
Commission following imposition of the underlying sentence.  *See*
*United States v. Concepcion*, 2019 WL 4804780 (D. Mass. Oct. 1,
2019).  It does not appear that Concepcion was seeking relief
under 18 U.S.C. § 3582(c)(1)(A), which is the provision under
which Ngyuen seeks compassionate release.

The Supreme Court ruled that the district and appellate
courts had erred in concluding that courts lacked discretion to
consider intervening changes in law and fact in addressing
matters such as Concepcion's argument that under current law he
would no longer be considered a career offender.  "Nothing in the
First Step Act contains such a limitation.  Because district
courts are always obligated to consider nonfrivolous arguments
presented by the parties, the First Step Act requires district
courts to consider intervening changes when parties raise them."
*Id.* at 2396.

On August 17, 2022, the Ninth Circuit decided *United*
*States v. Carter*, - F.4th -, 2022 WL 3440654 (9th Cir., Aug. 17,
2022).  In 2009, Carter had pled guilty to one count of
possession with intent to distribute at least 5 grams of cocaine

base in violation of 21 U.S.C. § 841(a)(1) and one count of carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).  Under the applicable laws at that time, he had a statutory range of 10 years to life and a guideline range of 322 to 387 months.  He was sentenced to 322 months of imprisonment.  *Id.* at *1.

The 2010 Fair Sentencing Act reduced penalties for possession of cocaine base, and the 2018 First Step Act authorized the application of the reduced penalties retroactively.  *Id.*  Without holding a hearing and without providing any explanation, the district court reduced Carter's sentence to 262 months.  *Id.* at *2.  On appeal, the Ninth Circuit noted that, under *Concepcion*, district courts could consider intervening changes in law or fact in exercising discretion to reduce a sentence under the First Step Act.  *Id.*  However, the Ninth Circuit stated that the district court had erred in light of *Concepcion* by failing to explain the reduction.  *Id.*

The Government argues that *Concepcion*, when read in conjunction with *Terry v. United States*, 141 S. Ct. 1858 (2021), stands for the proposition that a change in the law cannot form the basis for a modification of a sentence under § 3582(c)(1)(A).  The Government reads too much into *Terry*.  That case involved a conviction for possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and (b)(1)(C).

14

Terry sought a reduction in his sentence under the First Step
Act, which made retroactive the sentencing changes contained in
the Fair Sentencing Act. Terry moved under 18 U.S.C.
§ 3582(c)(1)(B), which permits a court to "modify an imposed term
of imprisonment to the extent expressly permitted by statute or
by Rule 35 of the Federal of Criminal Procedure." *See United
States v. Terry*, 2020 WL 8022235 (S.D. Fla. Jan. 27, 2020).
Thus, Terry was not seeking relief under the compassionate relief
provision found in § 3582(c)(1)(A), which Ngyuen relies on.

The Supreme Court held that Terry was not entitled to a
reduction. The Fair Sentencing Act had increased the quantity of
crack cocaine required to trigger a mandatory minimum sentence
(from 50 to 280 grams in § 841(b)(1)(A), which imposed a 10-year
mandatory minimum sentence, and from 5 to 28 grams in
§ 841(b)(1)(B), which imposed a 5-year mandatory minimum
sentence). Terry had been charged under § 841(b)(1)(C), which
did not require a specific amount of crack cocaine or impose a
mandatory minimum prison term. Because the Fair Sentencing Act
had not changed the penalties in his case, the Supreme Court held
that he was not entitled to the benefit of retroactivity flowing
from the First Step Act. *Id.* at 1863-64.

Neither *Concepcion* nor *Terry* involved a request for
compassionate release. In its supplemental memorandum filed on
August 18, 2022, the Government details when the Fair Sentencing

15

Act amendments are retroactive and argues that Ngyuen should be denied compassionate release because the amendments do not apply retroactively to him.  The Government's argument misses the mark. The very concept of compassionate release has compassion at its core.  If Ngyuen were entitled to the retroactive application of statutory amendments, he would presumably be bringing a different kind of motion.  In seeking compassionate release, he is arguing the inequity of his situation, a matter the Government ignores. Nothing in any statute or in any case cited by the Government precludes this court from considering that inequity in the compassionate release context.  As noted by *Concepcion*, "district courts have considered nonretroactive Guidelines amendments to help inform whether to reduce sentences at all, and if so, by how much."  142 S. Ct. at 2403.  Thus, the Supreme Court has recognized that nonretroactivity does not preclude this court's reliance on an amendment with respect to whether a particular defendant should be resentenced and to what term, referring to such amendments as "probative information" that this court may consider.

The Government's citation of *United States v. Thomas*, 2022 WL 3082529 (D. Ariz., Aug. 2, 2022) is also unpersuasive. The court in that case determined that a defendant who had only served 10 years of a 42-year sentence that might be 24 years if he were sentenced today did not demonstrate extraordinary and

compelling reasons justifying compassionate release. *Id.* at *4. *Thomas* does not stand for the proposition that the Fair Sentencing Act amendments at issue here can never be an extraordinary and compelling reasons justifying compassionate release.

This judge has ruled that a change in the law may be considered in the context of a compassionate release motion. *See United States v. Williams*, 2022 WL 1749116 (D. Haw. May 31, 2022). Chief Judge J. Michael Seabright of this district similarly considered a change in the law in *United States v. Lii*, 528 F. Supp. 3d 1153, 1162 (D. Haw. Mar. 23, 2021). Chief Judge J. Seabright noted that courts are split on the issue of whether drastic sentencing disparities in light of the First Step Act constitute extraordinary and compelling reasons for purposes of compassionate release motions under 18 U.S.C. § 3582(c)(1)(A). After citing cases holding that drastic sentencing disparities do not constitute extraordinary and compelling reasons, Chief Judge Seabright agreed with the only circuit court to have examined the matter and a growing number of district court cases, ruling that changes in a law may constitute an extraordinary and compelling reason to reduce a sentence under § 3582(c)(1)(A) so long as it is done on an individual basis. *Id.* at 1163. Chief Judge Seabright subsequently reached the same decision in *United States v. Kanohokula*, 572 F. Supp. 3d 895, 903 (D. Haw, 2021).

17

In *United States v McCoy*, 981 F.3d 271, 285 (4ᵗʰ Cir. 2020), cited by Chief Judge Seabright in *Lii*, the Fourth Circuit recognized that the severity of a sentence combined with an "enormous disparity" between the sentence imposed and the sentence that would be imposed today can constitute the requisite extraordinary and compelling circumstance justifying compassionate release.  The Fourth Circuit stated that courts may, when conducting an individualized assessment of a defendant's circumstances, "consider . . . that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *Id.* at 285-86.  The Ninth Circuit appears to have cited *Lii* with approval in *United States v. Gomez*, 2022 WL 543080, at *1 (9ᵗʰ Cir. Feb. 23, 2022), a recent memorandum decision.

In *Kanohokula*, 572 F. Supp. 3d at 902-03, Chief Judge Seabright concluded that a defendant sentenced to 168 months of imprisonment with a guideline range of 262 to 327 months who would now be sentenced to 97 months with a guideline range of 151 to 188 months (but who had already served 121 months) sufficiently demonstrated an "enormous disparity" justifying compassionate release.

In *Lii*, Chief Judge Seabright similarly concluded that the enormous sentencing disparity between mandatory life in prison and a 15-year sentence supported a determination of

extraordinary and compelling circumstances.  The defendant had already served the full mandatory minimum sentence of 15 years that he would have had to serve today, suggesting that he had already served a fair sentence and that the goals of incarceration had been achieved. 528 F. Supp. 3d at 1165.

In *United States v. Rutkowski*, Judge Jill A. Otake of this district ruled that the disparity between a life sentence imposed and a guideline range of 27 years (which also appeared unwarranted given the defendant's personal history and the characteristics and nature of his offense) was "so significant as to warrant a finding [of] extraordinary and compelling circumstances."

By contrast, in *United States v. Gomez*, 2021 WL 1240621, at *6 (D. Haw. Apr. 2, 2021), *aff'd*, 2022 WL 543080 (9th Cir. Feb. 23, 2022), the court did not find a disparity sufficient to support compassionate release when a defendant was sentenced to 240 months but says he would now be sentenced to 230 months, calling that disparity "small" and not "grossly disproportionate" to the "appropriate penalty" today.

Similarly, in *United States v. Latin*, 2022 WL 2488639 (July 6, 2022), the judge found no disparity sufficient to warrant compassionate release.  Latin had pled guilty in 2018 to conspiring to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine in violation of 21 U.S.C. §§
841(a)(1) and (b)(1)(a).  She had a guideline range of 151 to 188
months, but the Government filed two motions for downward
departure and Latin was ultimately sentenced to 120 months of
imprisonment.  At the time of her sentencing, she was ineligible
for the safety valve.  Subsequent to her sentencing, a change in
the manner the Ninth Circuit interpreted safety valve conditions
made Latin eligible for safety valve relief.  *Id.*, at *1.  With
safety valve eligibility, Latin would have had a guideline range
of 121 to 151 months.  The district judge did not consider the
difference between the 121 to 151 months and 151 to 188 months to
be an extraordinary and compelling reason justifying
compassionate relief.  *Id.*, at *4.

This case is closer to *Kanohokula*, *Lii*, and *Rutkowski*
than to *Gomez* or *Latin*.  This case involves a 168-month sentence
that would now be, at most, 121 months, possibly lower.  Of
course, this court is not saying that whenever there is a
disparity of at least 47 months that that will always justify
compassionate release.  Instead, this court has examined the
individual circumstances of this case, which involves a lengthy
period of incarceration already served, not to mention
expressions by Ngyuen of fears concerning personal safety.

20

      **2.**     **The COVID-19 Pandemic is an Additional Reason Supporting Compassionate Release Given Ngyuen's Increased Risk of Contracting a Severe Case.**

The change in the sentencing laws also happens to be accompanied by the additional circumstance of the ongoing pandemic, which this court considers in granting this motion. Ngyuen is 5'9" (ECF No. 325, PageID # 1114) and 202 pounds (ECF No. 774, PageID # 5844). This gives him a BMI of 29.8, placing him in the overweight category and nearly in the obese category (BMI of 30.0 and above). The CDC says that overweight and obese people are "more likely to get very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=Like%20adults%2C%20children%20with%20obesity,very%20sick%20from%20COVID%2D19 (last visted August 18, 2022). COVID-19 is present at his facility. *See* https://www.bop.gov/coronavirus/ (last visted August 18, 2022) (stating that Sheridan FCI currently has 5 inmates and 11 employees who have COVID-19). Although on its own this would not cause this court to grant this motion, the court recognizes that medical issues are often at the heart of any determination as to whether extraordinary and compelling reasons warrant a sentence reduction. Here, this court combines that circumstance with the analysis set forth in other sections of this order.

**B.    While There is No Applicable Policy Statement With Respect to Compassionate Release Motions Under § 3582(c)(1)(A), The Lack of Such a Policy Statement Does Not Prevent This Court From Granting the Present Motion.**

In orders addressing compassionate release motions in other cases, this judge has expressly recognized that she possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This judge is also well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments. *Balgas*, 2021 WL 2582573, at *2; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as

22

surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A). Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion. *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam); *see also United States v. Turner*, 2022 WL 883748 (Mar. 24, 2022) (finding no abuse of discretion when a district court considered changes in sentencing law despite that not being a factor identified in § 1B1.13 of the United States Sentencing Commission Guidelines Manual).

### C.   Section 3553(a) Factors Support Compassionate Release.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a), one of which is particularly relevant. Ngyuen was certainly involved with a serious drug offense. However, Ngyuen has been incarcerated for about 91 percent of what would now be considered

23

an appropriate punishment for that offense.  Additionally,
serving 110 months imprisonment is unquestionably a deterrent to
such criminal conduct.  In other words, Ngyuen has already
completed a significant sentence (assuming good time credit is
taken into account), and under the present circumstances the
goals of incarceration have been achieved.  In addition, as noted
earlier, Ngyuen has expressed concern about his safety given the
assistance he has provided to the Government.

While Ngyuen has a somewhat significant criminal
history, his placement in Criminal History Category III has
already taken that into account.  Similarly, the large amount of
methamphetamine Ngyuen was responsible for has been taken into
account in determining his offense level.

Ngyuen has had disciplinary issues while incarcerated.
In April 2017, he was disciplined for being in an unauthorized
area.  In September 2016, he was disciplined for tatooing.  And
in October 2015, he was disciplined for refusing to obey an
order.  *See* ECF No. 779-2, PageID # 5953.  These disciplinary
issues do not have great effect on the present decision, as they
are more than five years old and do not suggest any danger to the
community if Ngyuen is released.

Ngyuen has certainly made numerous attempts to
rehabilitate himself while imprisoned.  *See* ECF No. 771-3, PageID
# 5817 (listing numerous education courses taken).  Furthermore,

24

the Bureau of Prisons has designated him as a low or minimum
security inmate.  *See* ECF No. 771-5, PageID # 5823.  In fact,
the Bureau of Prisons trusts him enough to allow him to work at
the "FAC POWERHOUSE GATE PASS."  *See* ECF No. 771-3, PageID
# 5817.

Ngyuen also has outlined a release plan.  He says that,
if released, he will live with his brother in Las Vegas, where he
will seek employment.  He says he will ask his brother to try to
get him a job where his brother works.  He plans to study to get
a real estate license.  Finally, he plans to seek treatment and
enter programs for anger management, to attend substance abuse
meetings, and to take parenting classes.  *See* ECF No. 771-8.
While this plan is not as detailed as the court would like,
Ngyuen can work with his Probation Officer to craft a more
detailed plan.  Additionally, Ngyuen will immediately begin
serving his five-year term of supervised release.

**III.     CONCLUSION.**

Under § 3582(c)(1)(A), only extraordinary and
compelling reasons can justify a reduction in an inmate's
sentence.  Having considered the sentencing disparity, the amount
of time remaining on Ngyuens's sentence, his history and medical
situation, and the totality of other circumstances, this court
determines that there are extraordinary and compelling reasons
warranting a reduction in his sentence at this time and that the

25

§ 3553 factors support that release.  Ngyuen's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is therefore granted.  Accordingly, Ngyuen's sentence is reduced to time served plus three work days to allow the Bureau of Prisons and the probation office sufficient time to make suitable arrangements.

Ngyuen's compassionate release shall be conditioned on his compliance with the Stipulation and Order Modifying Conditions of Supervised Release filed this day.

It is so ordered.

DATED: Honolulu, Hawaii, August 23, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Ngyuen*, Cr. No. 13-00653-SOM-07; ORDER GRANTING DEFENDANT MICHAEL NGYUEN'S MOTION TO REDUCE SENTENCE